UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA     )
     )     No.  21 CR 128
v.     )
     )     Judge John F. Kness
KEVIN SMITH     )

**GOVERNMENT'S MEMORANDUM REGARDING
PROCEDURES FOR *FARETTA* COLLOQUY**

The United States of America, by and through its attorney, JOHN R. LAUSCH,

Jr., United States Attorney for the Northern District of Illinois, pursuant to the

Court's June 14, 2021 order, respectfully submits the following memorandum

regarding the required procedures for a *Faretta* colloquy.

**BACKGROUND**

On February 23, 2021, defendant Kevin Smith was charged in an indictment

with five counts of executing a scheme to defraud financial institutions, in violation

of 18 U.S.C. § 1344.  Dkt. 1.  During a telephonic initial appearance before Judge

Robert Gettleman on March 11, 2021, the Court appointed a Federal Defender staff

attorney to represent defendant, and the Court granted a motion for an agreed

protective order governing discovery.  Dkt. 10.  After the defendant stated that he did

not understand the charges against him, his appointed counsel asked to postpone

defendant's arraignment to give her time to discuss the charges with defendant.  The

Court then reset the arraignment for March 16, 2021.  *Id*.

At the continued arraignment on March 16, 2021 (also held telephonically),

defendant entered a plea of not guilty to the charges in the indictment.  Dkt. 16.

Defendant then told the Court that he did not understand the indictment or statutes of limitations, and he said that he wanted another attorney. Defendant asserted that he had just received correspondence from an attorney that day, and he expressed the desire to try to obtain another attorney. Judge Gettleman continued the case until April 27, 2021, to resolve the issue of defendant's representation. *Id.*

On April 6, 2021, while still represented by his initial court-appointed counsel, defendant himself filed a pleading entitled "Motion for Discovery/Conditional Acceptance/Motion to Dismiss." Dkt. 17. During the April 27, 2021 status hearing, defendant stated that as of that day, he did not want a defense attorney but wished to proceed *pro se*. Judge Gettleman allowed defendant's initial attorney to withdraw, and he said that the case would be reassigned to another district judge. Dkt. 18.

In a telephonic status hearing on May 18, 2021, this Court addressed the issue of defendant's stated desire to represent himself. The Court began to set an in-person hearing to resolve this matter, but defendant stated that he and some family members were feeling sick. The Court then scheduled a video hearing for the following week. Dkt. 22. On May 26, 2021, after defendant again stated his desire to proceed *pro se*, the Court attempted to place defendant under oath before asking him a number of questions consistent with *Faretta v. California*, 422 U.S. 806 (1975), and its progeny. Defendant objected to being placed under oath, and he began to ask the Court multiple questions. The Court continued the matter until June 9, 2021, for another video hearing. Dkt. 23. During the hearing on June 9, 2021, the Court again told defendant that he would be put under oath for purposes of the *Faretta* colloquy,

2

and defendant again resisted, stating that he had questions about being placed under oath and about the questions the Court intended to ask him. Among other things, defendant asked if the Court's questions were designed to cause defendant to answer a certain way, and defendant suggested that the colloquy would be some sort of "interrogation." In light of these events, the Court directed counsel for the government and an attorney from the Federal Defender panel to submit memoranda concerning the legal effect of defendant's apparent refusal to be sworn before the Court conducts the necessary colloquy regarding defendant's demand to proceed *pro se*. Dkt. 25.

## DISCUSSION

### I. Applicable Law

#### A. Right to self-representation.

Criminal defendants have not only a constitutional right to the assistance of counsel, but they also have a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806 (1975); *United States v. Johnson*, 980 F.3d 570, 576 (7th Cir. 2020). These alternate rights are also codified at 28 U.S.C. § 1654.

#### B. Elements needed for an effective waiver of right to counsel.

A criminal defendant's waiver of his or her Sixth Amendment right to the assistance of counsel must be "knowing and intelligent as well as voluntary and unequivocal." *United States v. Balsiger*, 910 F.3d 942, 952 (7th Cir. 2018). The defendant must be shown to understand "the dangers and disadvantages of proceeding *pro se*." *Id*. at 953. "The operative inquiry [as to the sufficiency of a court's

*Faretta* colloquy] is whether the record as a whole 'demonstrates that the defendant knowingly and intelligently waived his right to counsel.'" *Id.* (citation omitted).

The Seventh Circuit considers four factors when determining whether the defendant's waiver was knowing and informed: "(1) whether and to what extent the district court conducted a formal hearing into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to waive his right to counsel." *United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005).

C.     Need for defendant to be placed under oath.

The government has found no case expressly holding that a defendant must be placed under oath during a *Faretta* colloquy (or describing a court's options if a defendant refuses to be placed under oath). However, defendants are commonly placed under oath for this purpose – indeed, this appears to be the norm.[1]  The

---

[1] *See, e.g., McCollister v. Cameron*, 535 F. App'x 187, 190 (3d Cir. 2013) ("[McCollister] stated three times under oath that he desired to waive his right to counsel"); *United States v. Barnes*, 777 F. App'x 62, 64 (4th Cir. 2019) ("Barnes confirmed under oath that he fully understood his choice."); *Gross v. Cooper*, 312 F. App'x 671, 672 (5th Cir. 2009) ("No, no, I have put you under oath. I'm asking you. I need, for the record, for you to tell me why you don't want him to represent you, that's all."); *United States v. Wilhoite*, No. 16-6581, 2017 U.S. App. LEXIS 28003, at *2 (6th Cir. May 19, 2017) ("Wilhoite stated under oath that he wished to represent himself."); *United States v. Farhad*, 190 F.3d 1097, 1098 (9th Cir. 1999) ("The district court responded by holding a hearing and questioning Farhad under oath about his decision to elect self-representation."); *United States v. Krejcarek*, 453 F.3d 1290, 1298 (10th Cir. 2006) ("Mr. Krejcarek repeatedly affirmed under oath – that he understood clearly that he was giving up the right 'to be represented by a lawyer.'"); *United States v. Owen*, 963 F.3d 1040, 1046 (11th Cir. 2020) ("The court placed Owen under oath and advised him of his right to be represented by counsel.")

government found only one case[2] to the contrary, holding that the colloquy need not be answered under oath during the plea-withdrawal and sentencing phases.

A waiver of the right to counsel during trial, though, requires more from a court: "recognizing the enormous importance and role that an attorney plays at a criminal trial, [the Supreme Court has] imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). Numerous cases stress the importance of a district judge's conducting a "formal inquiry" to determine whether the defendant's waiver of trial counsel is knowing and intelligent. *E.g.*, *Patterson*, 487 U.S. at 299 ("we require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial"); *Johnson*, 980 F.3d at 577 ("a district court . . . should engage in a thorough and formal inquiry with a defendant") (internal quotation marks and citation omitted); *Todd*, 424 F.3d at 530-31 ("The most reliable way for a district court to ensure that the defendant has been adequately warned of the dangers and disadvantages of self-representation is to conduct a formal inquiry"); *United States v. Moya-Gomez*, 860 F.2d 706, 733 (7th Cir. 1988) ("we think it advisable that the district court, as a matter of course, conduct a formal inquiry"). However, none of those cases indicate whether placing the defendant under oath is a necessary or desired component of such a formal inquiry.

---

[2] *United States v. Vigil*, 605 F.App'x 757, 764-65 (10th Cir. 2015).

D.  Analogies to the procedure for accepting a guilty plea.

A defendant's waiver of the assistance of counsel is similar to a defendant's guilty plea in that they both involve the waiver of a constitutional trial right. Accordingly, the established procedures for accepting guilty pleas may be instructive as to the proper practice for accepting waivers of representation by counsel at trial. Federal Rule of Criminal Procedure 11(b)(1) provides that "[b]efore the court accepts a plea of guilty or nolo contendere, the defendant *may* be placed under oath . . ." (emphasis added).  However, placing the defendant under oath is "strongly recommended" in order to "avoid any subsequent contention in a proceeding under 28 U.S.C. § 2255 that the defendant did not answer truthfully at the taking of the plea because he or she was not sworn." Fed. Jud. Ctr., Benchbook for U.S. District Court Judges at 64 n.5 (6th ed. 2013).  This recommendation appears to mirror the caselaw relating to waivers of counsel; although perhaps not required, placing the defendant under oath is strongly preferred.

Notably, Rule 11(b)(1), governing the acceptance of a guilty plea, continues: "the court *must* address the defendant personally in open court" (emphasis added). Given the significant rights involved in a defendant's waiving the right to counsel at trial, just as the rights at stake in the entry of a guilty plea are considerable, it would be highly preferable for the *Faretta* colloquy to occur in open court, where the Court can best perceive the defendant's demeanor, credibility, and apparent understanding of all that the Court is discussing with him.  If this process is to occur remotely, via a video hearing, the importance of the defendant's being placed under oath is arguably

6

that much greater.  Ideally, the *Faretta* colloquy would occur both in open court and with the defendant placed under oath.

      E.      <u>Standard of review.</u>

Generally, constitutional issues receive *de novo* review.  *Balsiger*, 910 F.3d at 951.  In the Seventh Circuit, "[w]hether a defendant comported himself in a manner that amounted to a waiver of his Sixth Amendment right to counsel is a mixed question entitled to *de novo* review."  *Id*. at 951-52.  The appellate court "review[s] the district court's findings of fact, including assessments of a defendant's credibility, for clear error, and then determin[es] whether those findings support as a legal matter the court's conclusion that a defendant waived his right to counsel."  *Id*. at 952.

      F.      <u>The right to self-representation is not absolute – it can be denied or terminated at a later point.</u>

Finally, it bears noting that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  *Faretta*, 422 U.S. at 834 n.46 (citation omitted).  In *United States v. Brock*, 159 F.3d 1077, 1078 (7th Cir. 1998), after allowing his attorney to represent him in several pretrial proceedings, the defendant began filing *pro se* motions.  *Id*.  The district judge asked the defendant directly if he wished to waive his right to counsel, but the defendant refused to answer, "repeatedly demand[ing] a Bill of Particulars and challeng[ing] the court's authority," and eventually walking out of the courtroom.  *Id*. at 1078-79.  Similar interactions occurred twice more, resulting in two contempt citations, and finally the district judge prohibited the defendant from proceeding *pro*

*se. Id.* at 1079. Noting that the contempt citations had no correctional effect, the Seventh Circuit concluded that the defendant's conduct was sufficiently obstructive— "Brock's conduct made it practically impossible to proceed" with trial—that the court was within its right to revoke Brock's *pro se* status. *Id.* at 1080; *see also United States v. Brown*, 791 F.2d 577, 578 (7th Cir. 1986) ("A court faced with a defendant's refusal to proceed . . . may . . . rescind the defendant's permission to proceed as his own counsel.").

Defendant Smith's behavior has not yet risen to the level of disruption found in *Brock* or *Brown*. However, the Court has already observed during the June 9, 2021 hearing in this case that defendant was being "obstinate" and was "being willfully resistant to understanding [the Court]." If defendant's conduct worsens and makes it very difficult for the Court to move the case forward, the Court may terminate defendant's self-representation, even if the Court had previously allowed defendant to proceed *pro se*.

## CONCLUSION

For the reasons set forth above, the law does not absolutely require the Court to place defendant under oath for the *Faretta* colloquy, although that is the preferred—and apparently usual—procedure.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   /s/ *Stephen L. Heinze*
Stephen L. Heinze
Assistant United States Attorney

8