**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21 CR 128 |
| v. | Judge John F. Kness |
| KEVIN SMITH, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Between June 2011 and December 2013, Defendant is alleged to have participated in a scheme to defraud financial institutions by recruiting home buyers and submitting fraudulent loan applications. In February 2021, a grand jury indicted Defendant on five counts of bank fraud, in violation of 18 U.S.C. § 1344, based on the fraudulent loan applications connected to five different properties. Representing himself, Defendant filed two motions to dismiss, arguing, among other things, that purported violations of the Federal Rules of Criminal Procedure render the indictment invalid and, alternatively, that the five counts in the indictment are multiplicitous. (Dkts. 48, 51.)

For the reasons that follow, Defendant's motions are both denied. The Court finds no defects either in the indictment or in the prosecution of this case that would warrant dismissal. And because the five counts in the indictment were "chronologically and substantively independent" and put multiple financial

institutions at "additional financial risk," *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015), those counts are not multiplicitous.

## I.    BACKGROUND

As alleged in the indictment, Defendant Kevin Smith was a "loan originator" employed by Grand Bank, N.A. and Mortgage Services III, LLC. (Dkt. 1 ¶ 1.) Between June 2011 and December 2013, Defendant "knowingly participated in a scheme to defraud financial institutions and to obtain money and funds owned by and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts. . . ." (*Id.* ¶ 2.) Defendant's scheme involved recruiting individuals—for example, at "real estate investment seminars at churches and hotels in Chicago and its suburbs"—to serve as property buyers and to fraudulently obtain mortgage loans. (*Id.* ¶¶ 4−5.) The Special November 2019 Grand Jury charged Defendant with five counts of bank fraud, in violation of 18 U.S.C. § 1344,[1] in connection with the fraudulent purchase of five properties:

- Count I: defrauding Grand Bank, N.A. of approximately $190,056 on or about January 20, 2012 in connection with the purchase of 5649 S. Princeton Ave., Chicago, IL;

- Count II: defrauding Grand Bank, N.A. of approximately $175,437 on or about January 30, 2012 in connection with the purchase of 6628 S. Carpenter St., Chicago, IL;

---

[1] Under § 1344, "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." 18 U.S.C. § 1344.

- Counts III: defrauding Mortgage Services III, LLC of approximately $157,107 on or about July 10, 2012 in connection with the purchase of 4246 W. Adams St., Chicago, IL;

- Count IV: defrauding Mortgage Services III, LLC of approximately $190,056 on or about July 18, 2012 in connection with the purchase of 325 W. 59th Pl., Chicago, IL; and,

- Count V: defrauding 360 Mortgage Group, LLC of approximately $175,787 on or about December 18, 2013 in connection with the purchase of 6142 S. Morgan St., Chicago, IL.

(Dkt. 1.)[2] At his arraignment on March 16, 2021, Defendant pleaded not guilty to all five counts. (Dkt. 16.) Defendant's case was reassigned to this judge on April 27, 2021. On July 30, the Court granted Defendant's request to proceed pro se, finding that Defendant "knowingly and voluntarily ha[d] waived his right to appointment of counsel." (Dkt. 35.)[3]

Presently before the Court are two motions filed by Defendant: (1) a motion to dismiss "with extreme prejudice for insufficient process, insufficient service of process, and lack of personal jurisdiction and/or motion to quash process" (Dkt. 48); and (2) a "motion to dismiss counts due to multiplicity" (Dkt. 51).

## II.    STANDARD OF REVIEW

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." Fed. R. Crim. P. 7(c)(1). To be legally sufficient, an indictment must accomplish three things: "First, it must adequately state all the elements of the crime charged; second, it must inform the

---

[2] The signed version of the indictment is available under seal at Dkt. 2.

[3] The Court requested that an attorney from the Federal Defender panel be appointed and appear "as standby counsel" for Defendant. (Dkt. 30.)

defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). An indictment should align with the words of the statute, assuming that the statute specifies the elements that constitute the offense. *Id.* The indictment must "provide the defendant with some means of pinning down the specific conduct at issue" but need not include every relevant fact. *Id.* (cleaned up). Courts "review indictments on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (cleaned up).

To challenge the sufficiency of an indictment, a defendant may file a pretrial motion so long as the motion can be decided without a trial on the merits. Fed. R. Crim. P. 12(b)(3).

## III.    DISCUSSION

As a preliminary matter, the indictment in this case complies with Rule 7 and clearly informs Defendant "of the nature of the charges" against him. *Anderson*, 280 F.3d at 1124. As explained above, Defendant is charged with five counts of bank fraud, the specifics of which—the approximate dates on which the frauds occurred, the financial institutions allegedly defrauded, and the amounts defrauded—are clearly set out in that charging document. (Dkt. 1.) In his motions to dismiss, Defendant nonetheless raises a series of procedural arguments[4] in support of dismissal.

---

4 Defendant also asks the Court to provide him with various materials—"proof" of 22 listed items in the motion (Dkt. 48 at 1–4), and responses to six questions in his reply brief (Dkt.

### A.    Motion to Dismiss with Extreme Prejudice (Dkt. 48)

#### 1.    *Jurisdiction over Defendant*

In his motion to dismiss, Defendant challenges this Court's jurisdiction over

him. (Dkt. 48 at 4.) But the Court properly has both subject matter and personal

jurisdiction over Defendant.

In general, federal district courts have subject matter jurisdiction, "exclusive

of the courts of the States, [over] all offenses against the laws of the United States."

18 U.S.C. § 3231; *see United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005). In

turn, federal courts have personal jurisdiction over those committing such offenses

"within the territory of the United States." *Burke*, 425 F.3d at 408; *see United States*

*v. Alexander*, No. 21-2456, 2022 WL 566695, at *3 (7th Cir. Feb. 24, 2022)

(nonprecedential disposition) ("[A] district court has personal jurisdiction over any

party that appears before it, even if that appearance is compelled by an indictment."

(citations omitted)). Defendant's alleged violations of 18 U.S.C. § 1344, committed

within the borders of the United States (Dkt. 1), place him squarely within the Court's

subject matter and personal jurisdiction. Defendant's jurisdiction-related argument

is therefore denied.

---

69 at 10). Defendant poses a series of related questions in his motion for reconsideration.
(Dkt. 57.) Except to the extent those questions are addressed in this opinion, the Court
declines to answer Defendant's questions or offer him "proof" of any materials. Defendant
was granted leave to proceed pro se, but the Court appointed standby counsel to answer legal
questions he may have. (*See* Dkt. 30.) Defendant's questions and requests may be better
presented to standby counsel; Defendant's motion for reconsideration (Dkt. 57) is therefore
denied.

### 2.      Compliance with the Federal Rules of Criminal Procedure

Defendant also argues that there have been violations of Rules 4, 5(f), and 9 of the Federal Rules of Criminal Procedure. (Dkt. 48 at 4.)[5] Rules 4 and 9 govern issuance of arrest warrants or summonses related to complaints (Rule 4) and indictments or informations (Rule 9). Fed. R. Crim. P. 4, 9. Rule 5(f) requires that, "on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Fed. R. Crim. P. 5(f)(1).

The Court is not aware of any affirmative requirement that every indictment (or complaint) be accompanied by an arrest warrant, or that every indictment be delivered by a warrant-bearing law enforcement officer or agent. Such procedures, when (as here) unnecessary to alert a defendant to the pendency of criminal charges against him, would require the waste of limited judicial and law enforcement resources. Defendant's presence in these proceedings confirms, of course, that no

---

[5] Defendant also cites to various provisions of the Federal Rules of Civil Procedure. (*See* Dkt. 48 at 4.) But those rules are inapplicable to Defendant's criminal case. Fed. R. Civ. P. 1. (explaining that the Federal Rules of Civil Procedure "govern the procedure in all civil actions[.] . . ."); *see, e.g., United States v. Avant*, 851 F. App'x 643 (7th Cir. 2021) (explaining that a provision of the Federal Rules of Civil Procedure "is inapplicable in criminal proceedings"); *United States v. Hayes*, 282 F. App'x 281, 282 (4th Cir. 2008) ("[T]he Federal Rules of Civil Procedure are inapplicable to criminal proceedings."); *United States v. Salley*, No. 01CR750, 2009 WL 2259497, at *1 (N.D. Ill. July 29, 2009); *United States v. Davis*, No. 89 CR 580-11, 1997 WL 94730, at *1 (N.D. Ill. Mar. 3, 1997).

arrest warrant, nor a visit by law enforcement, was necessary to alert Defendant to the pendency of this criminal case.

Although it is not clear from the present record whether Rule 5(f) was addressed "at the first scheduled court date when both prosecutor and defense counsel [we]re present,"[6] any Rule 5-related defect has long since been remedied. More specifically, the Court addressed Rule 5(f) at a hearing held on December 3, 2021 (Dkt. 71), and the Court entered an "Order Under Criminal Rule 5(f)" on December 6, 2021—more than nine months before the scheduled trial date—in which the Court confirmed the Government's disclosure obligations under that rule. (Dkt. 72.) To the extent Defendant now seeks to be relieved of these charges based on a purported violation of Rule 5(f), the Court is confident, given the time remaining before trial, that any risk of a discovery violation has been adequately mitigated.

The record reflects that the indictment and earlier proceedings in this case comply with the Federal Rules of Criminal Procedure. That finding is amplified by Rule 2, which explains that the Rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. Defendant offers no basis to conclude that the Government's purported violations of the Rules (which the Court cannot discern in any event) affect the

---

[6] Defendant did not appear at the first scheduled arraignment (Dkt. 6) and, although he appeared at the second scheduled arraignment, Defendant "was not prepared"; as a result, the Court again rescheduled the hearing. (Dkt. 10.) Defendant's arraignment finally proceeded on March 16, 2021. (Dkt. 16.)

fairness of these criminal proceedings.[7] Absent such a basis, and in view of the indictment and proceedings' compliance with the Rules, Defendant's motion to dismiss is denied.

### 3. The Privacy Act

Defendant suggests vaguely that this case is "in violation of" the Privacy Act of 1974. (Dkt. 48 at 4.) The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any other person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). In turn, the Act provides civil remedies for violations. *See id.* § 552a(g)(1).

Even if Defendant is right that there has been a violation of the Privacy Act (an issue not reached in this opinion), the Court is not aware of, and Defendant supplies no citations to, any remedies under the Act available in criminal proceedings. Indeed, in the evidentiary context, other courts have explained that "violation[s] of the Privacy Act do[] not, by [themselves], justify exclusion of evidence

---

[7] At bottom, many of Defendant's concerns with supposed violations of specific rules apparently relate to concerns that his due process rights have been violated. (Dkt. 69 at 2.) But even if Defendant were correct that the Rules had been violated (which, again, the Court has not found), such Rule violations would not *ex ante* amount to constitutional injuries. The rights "granted by the Rules of Criminal Procedure . . . are not part of the constitutional right to due process." *Derby v. State*, 557 S.W.3d 355, 369 (Mo. Ct. App. 2018) (cleaned up); *cf. Dennis v. Williams*, No. 11-CV-319-JPG, 2012 WL 947962, at *2 (S.D. Ill. Mar. 20, 2012) (the "mere technical failure to follow court established rules of criminal procedure does not rise to the level of a constitutional claim that is cognizable under § 1983." (cleaned up)). Absent greater development and authoritative support, Defendant's arguments that Rules were violated (even if those arguments had merit) would not justify dismissal of the indictment on constitutional grounds.

in [] criminal proceeding[s]." *United States v. Cooper*, No. CR 05-0549 VRW, 2005 WL 3555713, at *3 (N.D. Cal. Dec. 28, 2005). Accordingly, the Privacy Act does not afford any relief to Defendant in this criminal case.

*        *        *

Defendant offers no valid bases to dismiss the indictment. Accordingly, the motion to dismiss (Dkt. 48) is denied.

### B.    Defendant's Motion to Dismiss Counts Due to Multiplicity (Dkt. 51)

In his motion to dismiss due to multiplicity, Defendant argues that the indictment is "multiplicitous" and "in violation of the Fifth Amendment's Double Jeopardy Clause." (Dkt. 51 at 2.) An indictment is multiplicitous if it "charges a single offense as separate counts." *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (citing *United States v. Starks,* 472 F.3d 466, 468–69 (7th Cir. 2006)). Such an indictment violates the Double Jeopardy Clause of the Fifth Amendment because it exposes the defendant "to the threat of receiving multiple punishments for the same offense." *Id.* To determine whether a given indictment contains multiplicitous counts, "we look to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum amount of activity for which criminal liability attaches." *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995).

Defendant is charged with five counts of bank fraud. (Dkt. 1.) The bank fraud statute, 18 U.S.C. § 1344, "criminalizes a knowing execution of a scheme to defraud a financial institution or a scheme to obtain money under the custody or control of a financial institution by means of fraudulent representations," and "[a] single criminal

scheme may have more than one execution." *Ajayi*, 808 F.3d at 1123−24 (citations omitted). In turn, an act is an chargeable "execution" for purposes of assessing multiplicity when it "puts the bank at an additional financial risk" and is "chronologically and substantively independent." *Id.* at 1124 (citations omitted).

All five counts charged in the indictment are independent executions and thus do not violate the rule against multiplicitous indictments. Defendant is charged in Count I with defrauding Grand Bank, N.A. of approximately $190,056 on or about January 20, 2012; in Count II with defrauding Grand Bank of approximately $175,437 on or about January 30, 2012; in Count III with defrauding Mortgage Services III, LLC of approximately $157,107 on or about July 10, 2012; in Count IV with defrauding Mortgage Services III of approximately $190,056 on or about July 18, 2012; and, in Count V, with defrauding 360 Mortgage Group, LLC of approximately $175,787 on or about December 18, 2013. (Dkt. 1.) Each count is also connected to a separate property. (*See id.*) Those counts thus pertain to conduct that independently put multiple financial institutions at "additional financial risk," and the conduct alleged in each count was "chronologically and substantively independent." *Ajayi*, 808 F.3d at 1124. All five counts are, therefore, not multiplicitous.

Defendant cites to *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991) in support of his position. (Dkt. 51 at 2.) But *Langford* assessed multiplicity under different provisions, 15 U.S.C. §§ 78j(b), 78ff, and Rule 10b-5 (governing alleged securities fraud), and the Eleventh Circuit held that "[t]o avoid the vices of

10

multiplicity in securities fraud cases, each count of the indictment must be based on a separate purchase or sale of securities and each count must specify a false statement of material fact—not a full-blown scheme to defraud—in connection with that purchase or sale." 946 F.2d at 804. Because the government failed to allege that each allegedly fraudulent mailing "contained a specific material misstatement" or that the defendant's "use of the mails was in conjunction with separate with separate purchase or sale transactions," the Eleventh Circuit concluded that the defendant's indictment was multiplicitous. *Id.*

Even if *Langford*'s interpretation of those other statutory provisions was binding on this Court's treatment of the present case, the indictment here adequately alleges "separate" occurrences of bank fraud on different days, against multiple financial institutions, and in connection with separate properties. Accordingly, the indictment is not multiplicitous. Defendant's motion to dismiss the indictment as multiplicitous (Dkt. 51) is therefore denied.

## IV.    CONCLUSION

Defendant's motions to dismiss (Dkts. 48, 51) are denied. Defendant's motion for reconsideration (Dkt. 57) is also denied.

SO ORDERED in No. 21 CR 128.

Date: April 14, 2022

_____

JOHN F. KNESS
United States District Judge

11